UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A. E. RADFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:23-cv-00685-JAR |
| v. | ) |
| | ) |
| POTOSI R-III SCHOOL DISTRICT | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Potosi R-III School District's motion to dismiss. ECF No. 6. For the following reasons, Defendant's motion shall be granted in part and denied in part.

## BACKGROUND

Defendant is a public school district in Missouri. Plaintiff A. E. Radford is a recent graduate of a school within Defendant's district, Potosi High School. She brings this action under the Missouri Human Rights Act ("MHRA") and Title IX of the Education Amendments Act of 1972, alleging that Defendant discriminated against her because of her sex while she was a student at Potosi. Specifically, she claims:

> Plaintiff does not conform to 'stereotypical' notions of being female. Plaintiff is a female who is romantically attracted to women. Traditional norms and stereotypes suggest that women are romantically attracted to men. If Plaintiff were a male who was attracted to women, she would not have been subject to discrimination.

ECF No. 1 at ¶¶ 28-31. She also claims that Defendants discriminated against her because she associated with individuals who were likewise protected by the MHRA because of their sex. This discrimination allegedly entailed, among other things, Defendant's teachers and

administrators singling her out for discipline, forbidding her from engaging in conduct that they permitted her straight peers to engage in, making demeaning comments to her about LGBTQ+ individuals, and allowing other students to make demeaning comments about LGBTQ+ individuals. Radford further claims that Defendant retaliated against her after she reported this discrimination.

On or about March 18, 2022, Radford filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR"). On February 28, 2023, the MCHR issued a Notice of Right to Sue, and on May 24, 2023, Radford timely filed a complaint in federal court. Counts 1 through 5 of her complaint allege Sex Discrimination in Public Accommodation (Count 1), Harassment based on Sex in Public Accommodation (Count 2), Retaliation (Count 3), Associational Discrimination (Count 4), and Aiding, Abetting, Inciting, Compelling, Coercing, Discrimination and Harassment (Count 5) in violation of Missouri Revised Statutes sections 213.065 and 213.070. Counts 6 and 7 allege Discrimination and Harassment (Count 6) and Retaliation (Count 7) in violation of 20 U.S.C. § 1681. This Court has subject matter jurisdiction over Radford's claims under 28 U.S.C. §§ 1331 and 1367.

Defendant now challenges some of Radford's MHRA claims under Rule 12(b)(6). First, it argues that some of Radford's allegations cannot support an MHRA sex discrimination claim because they are untimely. Second, Defendant argues that Counts 1 and 2 fail because the MHRA does not recognize sexual orientation or LGBTQ+ individuals as a protected class. Third, it argues that Radford's association with other LGBTQ+ individuals cannot support an associational discrimination claim because Radford is a member of the same class. Finally, Defendant argues that Radford fails to allege facts showing that Defendant aided or abetted discrimination.

**LEGAL STANDARD**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *Johnson v. McDonald Corp.*, 542 F. Supp. 3d 888, 890 (E.D. Mo. 2021).  The Court accepts all factual allegations as true and construes them in favor of the plaintiff.  *Id*.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqubal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*.  Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level.  *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

**DISCUSSION**

1. <u>Timeliness and Failure to Exhaust Administrative Remedies.</u>

To assert a claim of discrimination under the MHRA, a plaintiff must file a complaint with the MCHR within 180 days of the alleged discrimination.  Mo. Rev. Stat. § 213.075.1.  Failure to do so may be raised as a complete defense by a defendant during the proceedings before the MCHR or in subsequent litigation.  *Id.*  Because Radford filed her Charge of Discrimination on March 18, 2022, Defendant reasons that any allegations of discrimination taking place before September 19, 2021, cannot support Radford's claim and must be dismissed.  In particular, Defendant objects to Radford's allegations that:

- in middle school, she was singled out for punishment for referring to one of her friends by a nickname that was interpreted as a sexual comment, ECF No. 1 at ¶¶ 60-65;

- on or about January 26, 2021, one of her teachers berated her for objecting to negative comments about transgender people, *Id.* at ¶¶ 68-71;

- on another unspecified occasion in 2021, the same teacher asked Radford how much sex she was having during a conversation about the school's sex education curriculum, *Id.* at ¶¶ 73-76; and

- on January 15, 2021,  Defendant failed to investigate reports that students were posting "hateful and violent sex-based LGBTQ things on an Instagram account,  and making threats, including a video showing a real gay person's head being violently stomped into concrete, and pictures of weapons." *Id.* at ¶¶ 147-155.

Radford responds that these allegations are all part of a continuing violation and are not subject to the MHRA's 180-day limitation period.  To take advantage of the continuing violation doctrine, a plaintiff must demonstrate that (1) at least one act occurred within the filing period and (2) the current claim of discrimination is part of a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination.  *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 (Mo. Ct. App. 2012) (citing *Pollock v. Wetterau Food Distribution Grp.*, 11 S.W.3d 754, 763 (Mo. Ct. App. 1999)).  If the plaintiff proves both, then "the 180–day filing period becomes irrelevant ... [and][h]e may then offer evidence of the entire continuing violation." *Id.*

Radford has met the first element of the test.  She alleges the following acts occurred within the 180-day filing period:

- on September 21, 2021, the Assistant Band Director at Potosi High School berated her and made belittling statement to her because of her sex, ECF No. 1 at ¶¶ 86-93;

- on October 9, 2021, the same Assistant Band director singled her out for discipline because of her sex, even though she had done nothing wrong, *Id.* at ¶¶ 98-105; and

- on October 15, 2021, one of her teachers gave her a failing grade in the A+ Scholarship Cadet Teaching Program because of her sex.  *Id.* at ¶¶ 116-127.

Radford also notes that the fourth allegation Defendant seeks to dismiss actually occurred in January 2022, not January 2021. *See* ECF No. 1-1 at p. 6.[1]

At issue is the second element: whether the timely acts are sufficiently related to the untimely acts to constitute a "series of interrelated events." Courts analyzing whether alleged conduct constitutes a series of interrelated events look for " 'day-to-day' discriminatory events that occur on a regular basis, which . . . may not be significant individually but establish a continuing violation due to their cumulative effect." *Tisch*, 368 S.W.3d at 254 (quoting *Pollack*, 11 S.W.3d at 763). They are most commonly found when plaintiffs assert hostile work environment claims, which involve repeated conduct and cannot be pinpointed to a precise moment. *Kovach v. MFA, Inc.*, No. 2:21-CV-00013-SEP, 2021 WL 4125048, at *3 (E.D. Mo. Sept. 9, 2021).

The first untimely act challenged by Defendant—a middle school principal's reprimand of Radford—is not sufficiently related to Radford's timely allegations. The allegation took place well-before the other allegations of discrimination in the complaint, and it appears to have taken place at a different school. However, the second and third allegations challenged by Defendant are sufficiently related to the remaining allegations to state an ongoing violation. The gravamen of Radford's complaint is that Defendant's employees and administrators repeatedly singled her out for discipline and made demeaning comments to her such that it effectively denied Radford the same privileges of her school as enjoyed by other students. The individual instances in which teachers made demeaning comments to her may not have been significant, but Radford has sufficiently alleged that these day-to-day occurrences combined to deny her the same access to her school as other students. Her charge of discrimination and complaint make clear that these

---

[1] Radford argues that her complaint erroneously listed the date as 2021, but the incident is accurately described in her charge of discrimination as occurring in 2022.

episodes are merely examples of the ways that Defendant denied her this access. *See* ECF No. 1 at ¶¶ 59, 67, 72.

Accordingly, Defendant's motion to dismiss on this basis will be granted in part and denied in part. Radford's allegations related to discipline she received while in middle school (ECF No. 1 at ¶¶ 60-65) are time-barred and not actionable. *See Gillespie v. Charter Commc'ns*, 31 F. Supp. 3d 1030, 1034 (E.D. Mo. 2014). These allegations may nevertheless be used as background evidence in support of Radford's timely allegations. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

   2. <u>Counts 1 and 2 – Sex Discrimination</u>

Defendant next challenges Counts 1 and 2, Radford's sex discrimination and harassment claims under section 213.065.2. That statute provides:

> It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person . . . any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation . . . or to segregate or discriminate against any such person in the use thereof because of . . . sex . . . .

To prevail on her claims, Radford must therefore show that (1) she is a member of a class protected by section 213.065, (2) she was discriminated against in the use of a public accommodation, (3) her status as a member of a protected class was a motivating factor in that discrimination, and (4) she suffered damages as a result. *See R.M.A. by Appleberry v. Blue Springs R-IV School District*, 568 S.W.3d 420, 425-28 (Mo. 2019).

Defendant argues that Radford fails to adequately allege the third element: that her status as a member of a protected class was a motivating factor in the alleged discrimination. Even though Radford claims that she was discriminated against because of her sex, Defendant argues that this is an impermissible "sexual orientation" discrimination claim in disguise. It notes that

in *Pittman v. Cook Paper Recycling Corporation*, the Missouri Court of Appeals found that the MHRA did not prohibit discrimination based upon a person's sexual orientation. 278 S.W.3d 479, 483 (Mo. Ct. App. 2015). And though an individual may demonstrate sex discrimination through evidence of sexual stereotyping, *Lampley v. Missouri Commission on Human Rights.*, 570 S.W.3d 16, 25 (Mo. 2019), Defendant argues that non-conformance to stereotypes about sexual orientation cannot alone support a sex discrimination claim. Because the complaint "is void of any allegation as to how Plaintiff's behavior, mannerisms or appearance do not fit the stereotypical norms of what a female should be[,]" Defendant reasons that Radford fails to allege that her status as a member of a protected class was a motivating factor in the alleged discrimination. ECF No. 7 at p. 6.

Radford appears to agree that the only alleged stereotype undergirding her sex discrimination claim is that "women are romantically attracted to men." ECF No. 1 at p. 4; *See* ECF No. 8 at p. 6. The Court cannot identify any other stereotypical "behavior, mannerism, or appearance" that she alleges that she did not conform to. However, Radford argues that her allegations that she was discriminated against because of her sex is sufficient to state a sex discrimination claim, and she claims that she may demonstrate sex discrimination through evidence of sexual stereotyping.

For purposes of a motion to dismiss where all allegations are assume true, the Court agrees that Radford has adequately alleged that her sex was a motivating factor in the discrimination she faced. Throughout her complaint, she repeatedly alleges that she was discriminated against because of her sex. *E.g.* ECF No. 1 at ¶ 31 ("If Plaintiff were a male who was attracted to women, she would not have been subject to discrimination"); *Id.* at ¶ 59 ("Plaintiff has frequently been negatively singled out by Defendant because of her sex."); *Id.* at

76 ("Mrs. Peek singled Plaintiff out and humiliated her because of her sex and/or failure to conform to sex stereotypes."). "At this stage of the proceedings, that is all that is required" of Radford. *R.M.A.*, 568 S.W.3d at 428-29 (allegations that "Defendants have discriminated and continued to discriminate against Plaintiff R.M.A. based on his sex" and that "Plaintiff received different and inferior access to public facilities because of his sex" were sufficient to allege that sex was a contributing factor in discrimination claim under Missouri pleading standard).

Neither *Pittman* nor *Lampley* provide a basis for concluding otherwise. In the first case, Pittman, a gay man, alleged that his employer made a number of comments that were "discriminatory to a male homosexual" and "caused the workplace to be an objectively hostile and abusive environment[.]" *Pittman*, 478 S.W.3d at 481. The Missouri Court of Appeals agreed with the trial court that Pittman failed to state a claim because he did not allege "discrimination or harassment on the basis of 'sex.' " *Id.* at 483. He expressly alleged discrimination "*based on sexual preference*," and the MHRA does not specifically identify "sexual orientation as a protected status[.]" *Id.* at 484. However, unlike Pittman, Radford does not allege that she was discriminated against based on sexual preference; she alleges she was discriminated based on her sex.

This is not a distinction without a difference. In *R.M.A.*, the Missouri Supreme Court clarified that the holding in *Pittman* was limited to MHRA claims based on sexual orientation *status*. There, a transgender student alleged that the defendant school district discriminated against him by denying him access to the boys' restrooms and locker rooms. *Id.* at 424. In a footnote, the majority opinion rejected the dissent's argument that *Pittman* foreclosed the plaintiff's claims:

> As further support for its position that discrimination on the grounds of sex exclusively refers to biological sex, the dissenting opinion relies on *Pittman v. Cook*

> *Paper Recycling Corp.*, 478 S.W.3d 479 (Mo. App. 2015), and numerous federal circuit court cases. *Op.* at 432-33 n.4. Notably, however, none of these cases define the term "sex" exclusively to mean biological sex as the dissent does. Rather, the cases cited therein hold a plaintiff cannot claim the protection of Title VII based on either his or her (1) sexual orientation ***status*** . . . or (2) transgender ***status*** . . . . But in a case such as this where the plaintiff claims his discrimination was based on sex, neither set of cases is relevant. All of the above mentioned cases are distinguishable because, unlike the plaintiff in those cases, R.M.A. does not claim protection under the MHRA based on his transgender status but, rather, based on his sex.

*RMA by Appleberry*, 468 S.W.3d at 427 n. 9.  Radford's claims are likewise distinguishable from *Pittman*: she does not claim protection under the MHRA based on her sexual orientation status. Her allegation that she is a "female who is romantically attracted to women" is relevant to her claims only insofar as her nonconformity to stereotypes about who women are attracted to may demonstrate that she was treated differently because of her sex.

In the second case cited by Defendant, *Lampley*, the Missouri Supreme Court concluded that a plaintiff may demonstrate sex discrimination under the MHRA through evidence of sexual stereotyping, as Radford attempts to do here.  Like Pittman, Lampley alleged that he was gay, but Lampley specified that his employer discriminated against him because he did 'not exhibit the stereotypical attributes of how a male should appear and behave.' " *Id.* at 24.  Noting that an employer's reliance upon sex stereotypes in employment decisions may support an inference of sex discrimination under an analogous federal statute, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*,[2] and that the Missouri Commission on Human Rights already forbids sexual stereotyping in hiring, the Missouri Supreme Court concluded:

> [A]n employee who suffers an adverse employment decision based on sex-based stereotypical attitudes of how a member of the employee's sex should act can support an inference of unlawful sex discrimination. Sexual orientation is incidental and irrelevant to sex stereotyping. Sex discrimination is discrimination, it is

---

[2]  "When reviewing cases under the [Act, appellate courts] are guided by both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law." *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 76 (Mo. App. W.D. 2015).

- 9 -

prohibited by the Act, and an employee may demonstrate this discrimination through evidence of sexual stereotyping.

*Id.* at 25.

*Lampley* did not, however, distinguish among the sexual stereotypes that can support an inference that a plaintiff was discriminated because of her sex. Such distinctions would be difficult to reconcile with *R.M.A.*'s characterization of sex stereotypes as "merely one way to **prove** a claim of sex discrimination," and improper to consider upon a motion to dismiss. 568 S.W.3d at 426 n.4 ("[B]ecause the issue is whether R.M.A.'s petition states a claim for sex discrimination, this Court must leave for another day consideration of the proof of that claim, including any proof of 'sex stereotyping.' ").

Nevertheless, Defendant argues that *Lampley*'s statement that "[s]exual orientation is incidental and irrelevant to sex stereotyping" announced a rule barring the use of stereotypes about sexual orientation to demonstrate sex discrimination. The Court is unpersuaded for at least two reasons. First, Lampley's sexual orientation was incidental and irrelevant to his sex discrimination allegations as a *factual* matter: "There was no allegation the discrimination was based upon [Lampley's] sexual orientation." 570 S.W.3d at 24. The majority opinion accordingly rebuffed Judge Powell's dissenting opinion characterizing Lampley "as only seeking relief from sexual stereotyping . . . based upon sexual orientation," 570 S.W.3d at 23. The Court is therefore skeptical that the Missouri Supreme Court announced a rule barring the use of stereotypes about sexual orientation to demonstrate sex discrimination when that issue was not before the court.

Second, *Lampley* did not identify any basis for such a rule either in the text of the MHRA or in Missouri case law. Defendants note that *Lampley* cited a Second Circuit decision concluding that, "standing alone, the characteristic of being gay, lesbian, or bisexual cannot

sustain a sex stereotyping claim." *Id.* at 25 (citing *Christiansen v. Omnicom Group, Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). But *Lampley* did not explicitly or implicitly accept that conclusion—again, that issue was not before the court. *Lampley* cited the reasoning in *Christiansen* to explain that, even if an allegation that an individual is gay cannot alone sustain a sex stereotyping claim, gay individuals did "not have *less* protection under *Price Waterhouse* against traditional gender stereotype discrimination than do heterosexual individuals." *Id.* (quoting *Christiansen*, 852 F.3d at 200-01). Moreover, at the time the Missouri Supreme Court decided *Lampley*, the Second Circuit had already overturned its previous rulings that being gay or lesbian cannot alone demonstrate sex discrimination under Title VII. *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 108 (2018) ("[W]e now hold that Title VII prohibits discrimination on the basis of sexual orientation as discrimination 'because of . . . sex.' To the extent that our prior precedents held otherwise, they are overruled."). The Second Circuit reasoned:

> Because one cannot fully define a person's sexual orientation without identifying his or her sex, sexual orientation is a function of sex. Indeed sexual orientation is doubly delineated by sex because it is a function of both a person's sex and the sex of those to whom he or she is attracted. Logically, because sexual orientation is a function of sex and sex is a protected characteristic under Title VII, it follows that sexual orientation is also protected.

Id. at 113. The Court is again skeptical that the Missouri Supreme Court announced a rule of law that was unrelated to the allegations before it by citing an outdated statement of federal law elsewhere in its opinion.[3]

---

[3]   The parties do not dispute whether the Missouri Supreme Court would follow the reasoning of *Zarda* or *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020) to conclude that the MHRA prohibits discrimination on the basis of sexual orientation. The Court does not speculate how *Bostock* would affect the Missouri Supreme Court's interpretation of the MHRA either because doing so is unnecessary here. Whether the MHRA prohibits discrimination based on sexual orientation is irrelevant here because Radford alleges that she was discriminated against because of her sex, not because of her sexual orientation.

In short, neither *Pittman* nor *Lampley* provide support for Defendant's position. At issue in *Pittman* was whether sexual orientation is a protected status under the MHRA (it is not). And at issue in *Lampley* was whether sexual stereotypes may evince sex discrimination (they may). Neither addressed which stereotypes may evince sex discrimination, and neither found that stereotypes about sexual orientation cannot demonstrate sex discrimination. On the contrary, the Missouri Supreme Court has repeatedly rejected attempts to recharacterize a plaintiff's properly plead sex discrimination claims as impermissible sexual orientation discrimination claims, as Defendants attempts to do here. *Lampley*, 570 S.W.3d at 23; *R.M.A.*, 568 S.W.3d at 427 n.9. Radford has sufficiently alleged that she was discriminated against because of her sex. The Court "must leave for another day consideration of the proof of that claim, including any proof of 'sex stereotyping.' " *R.M.A.*, 568 S.W.3d at 426 n. 4. The Defendant's motion to dismiss on this basis is accordingly denied.

3. <u>Count 4: Associational Discrimination</u>

In addition to prohibiting discrimination on the basis of certain characteristics, the MHRA prohibits discrimination "in any manner against any other person because of such person's association with any person protected by this chapter." Mo. Rev. Stat. § 213.070.1(4). In Count 4 of Radford's complaint, she alleges that Defendant discriminated against her because of her association with students "who did not conform to particular sex stereotypes of their respective sexes assigned at birth." ECF No. 1 at ¶ 32. Defendant argues that this claim must fail for two reasons: (1) LGBTQ+ individuals are not protected by the MHRA, and (2) as a member of the LGBTQ+ community, Radford cannot establish a claim for association discrimination for associating with individuals who belong to the same class.

Neither of these arguments are persuasive at this stage of the proceeding. As explained above, Radford sufficiently alleges discrimination based on her sex. And Radford does not allege that she was discriminated against because of her association with LGBTQ+ individuals. She alleges that she was discriminated against because she associated with individuals protected by the MHRA because of their sex. Moreover, the Court has serious doubts that the MHRA does not prohibit discrimination on the basis of one's association with a person of the same "protected class." Defendant does not explain how discrimination against a person because of their association with another person of the same "protected class" is not also discrimination "against any other person because of such person's association with any person protected by this chapter." Mo. Rev. Stat. § 213.070.1(4).

Defendant cites two cases in which courts held that "association discrimination claims are not tenable when based on a characteristic shared by the plaintiff and the person with whom [s]he associates." *Hittle v. City of Stockton*, No. 2:12-cv-007766-TLN-KJN, 2016 WL 1267703, at *5 (E.D. Cal. Mar. 31, 2016); *see also Whitfield v. Trade Show Servs., Ltd*, No. 2:10-CV-00905-LRH, 2012 WL 693569, at *3-4 (D. Nev. Mar. 1, 2012) (holding same-race associational discrimination theory untenable). But neither of those cases applied the MHRA, and neither is persuasive. The *Hittle* court's sole legal authority for its assertion that same-race associational discrimination claims are untenable is the second case cited by Defendant, *Whitfield*. And in *Whitfield*, the statutes at issue—Title VII and NRS § 613.330—did not explicitly prohibit associational discrimination. The basis for the statutes' prohibition against associational discrimination was case law holding that discrimination against a person based on his association with a person of another race is necessarily discrimination on account of the complainant's race, "thereby satisfying Title VII's 'because of race' requirement." *Whitfield*, 2012 WL 693569, at

- 13 -

*3. Because the African-American plaintiff in *Whitfield* alleged that he was discriminated against for expressing an intent to vote for an African-American presidential candidate, the Court found that the same interracial association was not present, and thus the plaintiff did not meet the "because of race" requirement.

Conversely, the MHRA independently prohibits discrimination based on a person's association with a person protected by the statute. It does not require that associational discrimination is the result of a protected characteristic of the complainant. Because Radford sufficiently alleges that she was discriminated against based on her association with individuals protected by the statute, Defendant's motion to dismiss on this basis is denied.

4. <u>Count 5: Aiding and Abetting Discrimination.</u>

Finally, Defendant argues that Radford fails to state a claim for aiding and abetting. Section 213.070 provides that it is an unlawful practice "[t]o aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so." "Missouri law defines 'aiding and abetting' as 'affirmatively acting to aid the primary tortfeasor' by giving 'substantial assistance or encouragement' to him." *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1079 (8th Cir. 2021) (quoting *Bradley v. Ray*, 904 S.W.2d 302, 315 (Mo. Ct. App. 1995)). Defendant argues that the complaint is devoid of allegations that it affirmatively acted to aid other tortfeasors by giving assistance or encouragement to them. Instead, the complaint alleges that Defendant merely permitted teachers and student to engage in various conduct. And it argues that mere permission is insufficient. The Court agrees.

In Radford's response to Defendant's motion, Radford disagrees with the Eighth Circuit's interpretation of aiding and abetting claims under the MHRA, and she cites one allegation ostensibly showing Defendant gave substantial assistance to another:

> Plaintiff pled that Defendant attempted to manipulate her into withdrawing her complaint. (Complaint, Doc. 1 at ¶ 113-114). It could be reasonably inferred that doing so constituted an affirmative act to aid the tortfeasors by giving them assistance. Thus, Plaintiff has made a submissible claim, and Defendant's motion should be denied.

ECF No. 9 at p. 10.  But, as Defendant notes, the complaint that Defendant allegedly attempted to manipulate her into withdrawing was a complaint against Defendant's Assistant Superintendent.  One cannot aid and abet oneself under the MHRA.  *Reed v. Harley-Davidson Motor Co. Grp., LLC*, No. 19-6026-CV-W-HFS, 2019 WL 13293110, at *5 (W.D. Mo. Nov. 7, 2019).  Because Radford does not identify any allegations which, accepted as true, support her aiding and abetting claim, the Court will grant Defendant's motion to dismiss on this basis.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [ECF No. 6] is **GRANTED** in part and **DENIED** in part, as stated herein.  Radford's allegations related to discipline she received while in middle school (ECF No. 1 at ¶¶ 60-65) are time-barred and not actionable under the MHRA.  Count 5 is **DISMISSED** without prejudice.

*[signature: John A. Ross]*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2024.